# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE EMILIO E. M.,[1] | Case No.: 1:25-cv-02054-SKO (HC) |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING RESPONDENT TO RELEASE PETITIONER, DIRECTING RESPONDENTS TO FILE STATUS REPORT, AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT |
| v. | |
| CHRISTOPHER CHESTNUT, et al., | |
| Respondents. | |

Petitioner Jose Emilio E. M. is a citizen of Guatemala proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. 7, 9, 10.)

On December 29, 2025, Petitioner filed a petition for writ of habeas corpus, (Doc. 1), along with a motion for temporary restraining order ("TRO"), (Doc. 2), seeking immediate release from detention.  On December 30, 2025, the District Court denied the TRO as untimely, converted the

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. See Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

motion for TRO to a motion for preliminary injunction, and referred the matter to the undersigned for further proceedings. (Doc. 5.)

On January 15, 2026, Respondents filed a unified opposition to the motion for preliminary injunction and response to the petition, and moved to dismiss the petition. (Doc. 11.) On January 26, 2026, Petitioner filed a reply to Respondent's opposition and motion to dismiss. (Doc. 12.)

For the reasons explained below, the Court will GRANT the petition.

## I.    BACKGROUND

Petitioner entered the United States without inspection on or about November 3, 2023. (Doc. 1 at 5.) On November 4, 2023, he was arrested and detained by Immigration and Customs Enforcement ("ICE") officials. (Doc. 11-2 at 1-3.) He was subsequently issued a Form I-862 Notice to Appear and Form I-220A and released on his own recognizance due to lack of bed space after immigration officials determined he was not a danger to the community or a flight risk. (Doc. 11-4 at 1-3.)

The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the Government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018).

On November 19, 2025, Petitioner appeared for a required ICE check-in appointment in San Francisco with his wife and child. (Doc. 1 at 6.) After being separated from his family, Petitioner was informed he was being detained due to his asylum case. (Doc. 1 at 6.)  Petitioner states he was detained without any notice, hearing, or on-the-record determination before a neutral arbiter. (Doc. 1 at 23.) Respondents claim Petitioner was detained due to violations of his release conditions, specifically, an arrest for driving under the influence in June 2025. (Doc. 11 at 2.)  Respondents submit he was taken into custody when ICE deportation officers discovered the arrest on November 19, 2025. (Doc. 11-4 at 3.) Based on the record, the decision to detain Petitioner was made at the time he reported. (Doc. 11-4 at 3) (Petitioner was "released on an Order of Release on Recognizance, which

was cancelled November 19, 2025, due to being taken into ICE custody.")  Petitioner is in removal proceedings in immigration court. (Doc. 1 at 6.) He is currently in detention in the California City Detention Center. (Doc. 1 at 6.)

## II.    JURISDICTION AND LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A district court may grant a writ of habeas corpus when the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)).

## III.    DISCUSSION

Civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas v. Davis, 533 U.S. 678, 690 (2001); Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Petitioner contends that the Due Process Clause bars the Government from re-detaining him without first providing a hearing where it must prove he is a flight risk or danger.  (Doc. 1 at 23-25.) Petitioner further alleges that his detention is governed by 8 U.S.C. § 1226(a). (Doc. 1 at 23.)  Respondents contend Petitioner was detained due to violations of his conditions of release and was taken into custody pursuant to § 1225(b)(2)(A). (Doc. 11 at 2-3.) Respondents cite to Petitioner's June 2025 arrest for driving under the influence. However, there does not appear to be a disposition in the case. If the charges remain pending, Petitioner remains innocent until proven guilty. It is also clear that Petitioner was not given any notice or opportunity to be heard before his detention. As Respondents acknowledge, the decision to detain came about when Respondents discovered the arrest during his check-in. It is also clear that no neutral arbiter determined there was a change in circumstances which would justify revoking Petitioner's release prior to detention.

Respondents rely on a new interpretation of § 1225(b)(2) —that Petitioner's recent re-detention is mandatory under section 1225(b)(2)(A) because Petitioner is considered an "applicant for admission." (Doc. 11 at 4-7.)  Accordingly, before turning to the standard due process analysis, the Court will address the threshold matter of whether Petitioner's re-detention is authorized by section 1225(b)(2)(A) as Respondents contend, or under section 1226(a) as Petitioner contends.

When first presented with the Government's new interpretation of section 1225(b)(2)(A), some courts described this read of the statute as "novel."  See, e.g., Barrera v. Tindall, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at *5 (W.D. Ky. Sept. 19, 2025).  Since then, this interpretation has been almost universally rejected by district courts throughout the country, including this Court. Valencia v. Chestnut, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (noting that "[h]ere in the Eastern District of California, recent decisions have largely rejected the government's interpretation of Section 1225(b)(2) as applicable to all 'applicants for admission,'" recognizing "[o]ther district courts have also reached the result that Section 1226(a), not Section 1225(b)(2), provides the appropriate framework for noncitizens already residing in the United States," and collecting cases). As it has done on previous occasions, this Court will follow the majority approach in finding that "Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025).

In addition, the record shows that the Government treated Petitioner as subject to 8 U.S.C. § 1226(a), which does not mandate detention, after it released him in 2023. Petitioner was released on his own recognizance, which means that he was released pursuant to § 1226(a). See Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). Respondents' recent attempt to then switch course and say that § 1225(b) is the appropriate detention authority is thus contradicted by their own statements, arguments, and exhibits in the record. As Petitioner was released

pursuant to § 1226(a) and § 1225(b) is inapplicable, Respondent's argument that his detention is now governed by § 1225(b)(2)(A) is untenable.

In summary, consistent with the overwhelming consensus rejecting Respondents' interpretation of section 1225(b)(2)(A), this Court concludes that section 1226(a), not section 1225(b)(2)(A), authorizes and dictates Respondents' authority to re-detain Petitioner.

The Court next turns to Petitioner's due process claim.  Due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

### A.  Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the Government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute.  See id. (due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey."  Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [Government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison."  Id.  "The parolee has relied on at least an implicit

promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481–84.

Immigration officials' November 2023 release of Petitioner on his own recognizance pending his immigration proceedings was similar, and allowed him to live in the country subject to supervision but out of custody, for the past 2 years. And that time inherently allowed Petitioner to form "enduring attachments of normal life," including allowing him to live in the United States with his wife and child and establish ties to the community. Id. at 482. The Court concludes that Petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Because the Court concludes that Petitioner has a protected liberty interest in his release, see Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest), the Court must next determine what process is due before the Government may terminate Petitioner's liberty.

**B. The Mathews Factors Demonstrate Petitioner is Entitled to a Pre-Deprivation Hearing**

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the Mathews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); see Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).

Turning to the first factor, Petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from Government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for the past 2 years, and during that time, he has lived with his family and developed ties to the community. His detention denies him that freedom.

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the Petitioner] has not received any bond or custody redetermination hearing." A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla, 704 F. Supp. 3d at 1172. Although Respondents assert that Petitioner has been charged with a crime (driving under the influence), the charges apparently remain pending, and Petitioner remains innocent until proven guilty. No neutral arbiter has determined that the facts show Petitioner is a flight risk or danger to the community. No neutral arbiter has determined that circumstances had materially changed sufficiently to justify revocation of parole. Because of Respondents' new statutory interpretation, Petitioner has also been denied a bond redetermination hearing. Given the absence of any procedural safeguards to determine if his detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." A.E., 2025 WL 1424382, at *5.

Third, although the Government has a strong interest in enforcing the immigration laws, the Government's interest in re-detaining Petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. March 3, 2025). In immigration court, custody hearings are routine and impose a "minimal" cost. Doe, 2025 WL 691664, at *6. "If the Government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors show that *before* Respondents could lawfully re-detain Petitioner, he was entitled to a hearing. "'[T]he root requirement' of the Due Process Clause" is "that

an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971)); see Zinermon, 494 U.S. at 127 ("[a]pplying [the Mathews] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty"). And consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden would be on the Government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence. See, e.g., Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025) (reaching the same conclusion); Garcia, 2025 WL 1927596, at *5 (same); Pinchi v. Noem, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025) (same); Ortega, 415 F. Supp. 3d at 970 (same); Doe, 2025 WL 691664, at *6 (same); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (same); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022) (same); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (same). Accordingly, Petitioner's re-detention is in violation of the Due Process Clause of the Fifth Amendment.

## IV.    CONCLUSION & ORDER

Based on the foregoing, the Court concludes that Respondents violated Petitioner's due process rights when they re-detained him without first having conducted a pre-deprivation hearing before a neutral arbiter where the Government established that Petitioner was a flight risk or danger to the community, thereby legally justifying physical custody.

For the foregoing reasons, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is GRANTED;

2) Respondents are DIRECTED to IMMEDIATELY RELEASE Petitioner on the same conditions to which he was subject immediately prior to his detention on November 19, 2025;

3) Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner absent written notice and a pre-detention hearing before a neutral arbiter where the government

must demonstrate by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight;

4) On or before February 20, 2026, Respondents SHALL FILE a status report with the Court confirming that Petitioner has been released; and

5) The Clerk of Court is directed to enter judgment. Once Respondents' status report confirming Petitioner's release is received, the case will be closed.

IT IS SO ORDERED.

Dated:   **February 12, 2026**                    /s/ *Sheila K. Oberto*
                                                  UNITED STATES MAGISTRATE JUDGE